T. Rick Frazier
Texas Bar 0740655
2591 Dallas Pkwy, Suite 300
Frisco, TX 75034-8563
972-661-3288
844-558-5758 fax
trickfrazier@me.com

ATTORNEY FOR PLAINTIFF

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 18-41781 |
| | § | |
| **MARILYN SELVAGGI** | § | |
| | § | |
| **DEBTOR** | § | CHAPTER 7 |

| | | |
|---|---|---|
| **INGLISH INTERNATIONAL** | § | |
| **CONSTRUCTION, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Adversary Proceeding No. _____** |
| | § | |
| **MARILYN SELVAGGI** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AGAINST MARILYN SELVAGGI
## TO DETERMINE DEBT AND DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523

**COME NOW INGLISH INTERNATIONAL CONSTRUCTION, LLC**, Plaintiff, creditor, and party in interest in the above styled and numbered bankruptcy proceeding, and files its Original Complaint Against Marilyn Selvaggi ("Debtor"), to Determine Debt and Dischargeability of Debt Under 11 United States Code section 523 and in support of its Complaint would show the Court as follows:

### JURISDICTION

1.      This court has jurisdiction over the subject matter of this Complaint as a core proceeding pursuant to the provisions of 28 United States Code sections 1334 and 157(b)(2)(B), (I), (J) and 11 United States

PLAINTIFF'S ORIGINAL COMPLAINT AGAINST MARILYN SELVAGGI TO
DETERMINE DEBT AND DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. §523

1 PAGE

Code section 523 since this is a proceeding to determine the debt owed by Debtor to Plaintiff and the dischargeability of such particular debt. This Court also has jurisdiction over the other asserted causes of action as "related to" the bankruptcy under 28 U.S.C. §157(c)(1) and 28 U.S.C. §1334.

## PARTIES

2.      Plaintiff, Inglish International Construction, LLC is a Texas limited liability company with offices located in Dallas County, Texas.

3.      Marilyn Selvaggi is an individual and is the debtor in the underlying bankruptcy proceeding. Ms. Selvaggi may be served with process at her residence at 4680 FM 272, Celeste, Fannin County, Texas 75423.

## FACTUAL ALLEGATIONS

4.      In June 2015, Plaintiff's Predecessor in Interest, Muhamad Abdelkader ("Abdelkader") first met Assem Elsergani ("Elsergani") on his alleged property in Fannin County located at 4680 FM 272 Celeste, Texas 75243 (the "Property") through a mutual acquaintance. Elsergani introduced himself as a builder and developer who had built a slaughterhouse on the Property, a facility where livestock was butchered in order to be suitable for consumption under the Muslim religion's requirements for Halal. Elsergani stated that he was married to Defendant, Marilyn Selvaggi ("Selvaggi"). Elsergani presented himself to Abdelkader as a very religious, honest and ethical person. Elsergani told Abdelkader that he was considering leasing the slaughterhouse with an option to purchase. Alternatively, Elsergani expressed an interest to find a partner to help run and finance the slaughterhouse to sell halal/kosher meats. Elsergani represented to Abdelkader that he had made $10,000 to $15,000 per month net profit when he operated the business, but that the slaughterhouse had not been operated except for religious events because of Elsergani's health issues. For almost a year, Elsergani contacted Abdelkader on several occasions discussing a business arrangement to operate the slaughterhouse.

5.      Beginning in May, 2016, Abdelkader met with Elsergani on several occasions. Defendant Selvaggi was present at many of the meetings and heard Elsergani misrepresent that he was an owner of

the Property and that he and Selvaggi were married. Elsergani advised Abdelkader that any business

arrangement must include an agreement to purchase of the Property by Abdelkader or his business entities

PM Livestock LLC, Desert of Arabia EC Realty LLC ("Predecessors in Interest"). Abdelkader advised

Elsergani that he could not commit to such a purchase until there was adequate business operations to

establish that the slaughterhouse was capable of producing revenues as Elsergani had represented.

Elsergani stated to Abdelkader that they could prepare for the Muslim Eid festival held in Celeste,

Texas, in September, 2016 and because it was a religious event it would be exempt from licensing and

permitting. In early June, 2016, Elsergani prepared a document entitled "Business Plan" wherein

Abdelkader would provide sufficient funds to purchase and maintain livestock to be slaughtered and sold

for Eid festival and Abdelkader and Elsergani executed the agreement. Thereafter, Abdelkader began

giving funds to Elsergani to begin the livestock acquisition. At the same time, Selvaggi delivered to

Abdelkader various documentation concerning the slaughterhouse including pricing, a copy of the alleged

permit, a list of customers and other related business documents.

6.      In mid June, 2016, Abdelkader first learned that the permit required by the State of Texas had

been surrendered and he also learned that the slaughterhouse could not be operated for the Eid festival

without a permit. Abdelkader also learned that to obtain a new permit, the State of Texas would require

the slaughterhouse to be completely renovated before it could pass inspection. Because Abdelkader had

already committed to acquiring the livestock and had invested funds, Abdelkader had no option other

than to commit to the restoration of the slaughterhouse. When Abdelkader confronted Elsergani over this

issue, Selvaggi first revealed to Abdelkader that she and Elsergani were not married. Selvaggi also

revealed to Abdelkader that Elsergani owned no portion of the Property as the Property was owned by

her exclusively. Selvaggi insisted that the parties enter into a separate purchase agreement for the Property

before the parties could continue with the slaughterhouse operation. Abdelkader advised Selvaggi that he

could not enter into a purchase agreement for the Property until it was proven that the slaughterhouse

could be operated at a profit as had been represented to him. Consequently, Abdelkader prepared and

presented Selvaggi with a document entitled "Letter of Intent to Purchase." The document included the

operation of the slaughterhouse to prepare for the Eid festival including restoration of the slaughterhouse.

The document also provided that a Purchase and Sale Agreement would subsequently be prepared and

executed by the parties. Selvaggi and Abdelkader executed the Letter of Intent on June 15, 2016.

7.      Between June and September, 2016, Abdelkader acted as general contractor in coordinating the

construction, refurbishing and remodeling of the structures including the slaughterhouse and barn

facilities. The amounts that were spent in conjunction with construction and remodeling project were:

| | |
|---|---|
| Construction labor | $33,625.57 |
| Construction management | $ 7,200.00 |
| Construction materials | $43,201.76 |
| TOTAL | $84,027.33 |

8.      By the end of June and early July, 2016, it became apparent that Selvaggi and Elsergani had no

intention of continuing the agreements that had been entered. For example, more than 200 head of

livestock either died or disappeared. Selvaggi had represented that she was capable of treating any sick

animals but regardless of any efforts the livestock continued to die. Selvaggi became belligerent and

uncooperative with the inspectors from the State of Texas preventing the slaughterhouse from obtaining

a license. Selvaggi refused to allow Abdelkader to take sufficient actions to secure the Property from

further loss of livestock.

9.      On or about September 8, 2016, Selvaggi demanded that Abdelkader vacate the Property.

Selvaggi clearly wanted to obtain the benefit of the work and money invested by Abdelkader and force

Abdelkader to vacate the Property with nothing. Selvaggi also began attempting to sell the Property,

which had been significantly increased in value by Abdelkader. Selvaggi's conduct not only clearly

violated the parties' agreements but was contrary to prior representations. Abdelkader discovered that all

the representations made by Elsergani and Selvaggi to induce Abdelkader to enter into the Business Plan

and the Letter of Intent were completely false. As a result of these misrepresentations, Abdelkader was

unable to sell meat for the Eid holiday, which caused significant damages to Abdelkader. Elsergani and

Selvaggi clearly intended to deceive Abdelkader into investing in the business and then have Abdelkader removed from the Property so that Elsergani and Selvaggi could enjoy the benefit of Abdelkader's investment.

10.     On or about September 15, 2016, Selvaggi filed an action against Abdelkader for forcible detainer in the Justice Court. The Justice Court entered an order dismissing the forcible detainer case for lack of subject matter jurisdiction. Despite this fact, Selvaggi continued to engage in a repeated pattern of harassment of Abdelkader and his employees, negatively interfered with the business, and made numerous unfounded and salacious allegations against Abdelkader in attempt to force Abdelkader to vacate the Property and lose his investment. On or about October 14, 2016, Selvaggi, through counsel, sent written notice to Abdelkader that the Letter of Intent to purchase the Property was terminated, and demanded that Abdelkader vacate the Property. On December 9, 2016, after suit was filed by Abdelkader, an Agreed Order Granting Temporary Injunction (the "TRO") relating to the use of the Property was entered. As part of the TRO, Selvaggi agreed to refrain from communicating threatening comments toward Abdelkader and was only provided the right to "inspect the [P]roperty no more tha[n] one time per week," with Abdelkader being given the "right to be present during the inspection." The TRO made clear that Abdelkader was allowed to maintain possession of the Property and Selvaggi and Elsergani were not to interfere with the business operations.

11.     Nonetheless, on January 12, 2017, Abdelkader arrived at the Property to find the locks he placed on the front gate of the Property removed, and new locks installed. Shortly thereafter, Abdelkader observed Selvaggi exit the slaughterhouse office carrying a crate containing Abdelkader's office files and business records. Abdelkader immediately inquired about the documents, but to no avail. Selvaggi began yelling to Elsergani, who was inside the slaughterhouse, to come out and shoot Abdelkader.  In imminent fear for his life, Abdelkader immediately dialed 911. While on the call, Abdelkader observed Elsergani exit the slaughterhouse office with a gun in his hand. Abdelkader heard Selvaggi continue to urge Elsergani to "shoot him." While still on the phone with 911, Elsergani fired his gun at Abdelkader. In

fear for his life, Abdelkader returned to his car. Elsergani walked toward Abdelkader's car and threatened

to kill him if he exited his car. A short time later, police arrived at the Property and arrested Selvaggi and

Elsergani. Thereafter Abdelkader believed it to be too dangerous to continue the operation and thereafter

disposed of the remaining livestock and abandoned the project.

12.    During the construction period, the Predecessors in Interest borrowed money from Plaintiff's

managing member to finance the construction activities. In exchange for a partial forgiveness of the

indebtedness, the Predecessors in Interest have assigned any and all claims relating to the activities to

Plaintiff.

## CAUSES OF ACTION

## FIRST COUNT:

## VIOLATION OF 11 U.S.C. §523(a)(2)(A)

13.    Plaintiff reasserts Paragraphs 1 through 12 by reference as if specifically set forth herein.

a.    The Debtor, through false pretenses, false representation, or actual fraud obtained money

from Plaintiff's Predecessors in Interest.

b.    Debtor's conduct violated 11 U.S.C. §523(a)(2)(A) and, therefore, her indebtedness to

Plaintiff constitutes a nondischargeable debt. The actions of the Debtor as described in this

Complaint show that the property received by Debtor was obtained by false pretenses, false

representation, or actual fraud.

## SECOND COUNT:

## VIOLATION OF 11 U.S.C. §523(a)(4)

14.    Plaintiff reasserts Paragraphs 1 through 12 by reference as if specifically set forth herein.

a.    Debtor committed fraud or defalcation while acting in a fiduciary capacity.

b.    The Debtor's conduct violated 11 U.S.C. §523(a)(4) and, therefore, her indebtedness to

Plaintiff constitutes a nondischargeable debt.  The actions of the Debtor as described in this

Complaint show that Debtor became the agent, and therefore fiduciary, of Plaintiff's Predecessors

in Interest, thereafter, committed fraud by failing to inform Plaintiff's Predecessors in Interest of

the fact that she was the owner of the Property at the time of the negotiations.

## THIRD COUNT:

## VIOLATION OF 11 U.S.C. §523(a)(6)

14.     Plaintiff reasserts Paragraphs 1 through 12 by reference as if specifically set forth herein.

a.      Debtor willfully and maliciously injured Plaintiff's Predecessors in Interest by her actions

and through her malfeasance as described above.

b.      The Debtor's conduct violated 11 U.S.C. §523(a)(6) and, therefore, her indebtedness to

Plaintiff's Predecessors in Interest constitutes a nondischargeable debt.

## FOURTH COUNT:

## COMMITTED FRAUD

15.     Given Debtor's misconduct, as described in this document, she is guilty of fraud, including fraud

by nondisclosure. Debtor made fraudulent representations that were and are false, and also failed to

disclose important facts concerning the operation of the slaughterhouse in order to obtain money from

the Plaintiff's Predecessors in Interest. At the time Debtor made the representations she knew them to be

false or, in the alternative, the false representations were made recklessly as a positive assertion and

without knowledge of the truth.  These representations were made to Plaintiff's Predecessors in Interest

and it relied upon them to its detriment and injury, including making the decision to invest money to

improve the Property. Plaintiff pleads for all applicable elements of actual damages allowed by Texas

law for fraud, including economic damages and out-of-pocket losses. Plaintiff also pleads for exemplary

damages in an amount to serve sufficient punishment to Debtor.

## FIFTH COUNT:

### *QUANTUM MERUIT*

16.     Plaintiff's Predecessors in Interest furnished valuable services and goods to Debtor. In the event there existed no express contract between Plaintiff's Predecessors in Interest and Debtor concerning those services and materials furnished by Plaintiff's Predecessors in Interest, since Debtor accepted those services provided by Plaintiff's Predecessors in Interest and knew or should have known that Plaintiff's Predecessors in Interest in performing those services expected to be paid by Debtor. Plaintiff is entitled to recover the reasonable value thereof that Plaintiff asserts to be at least the amount set forth above.

## SIXTH COUNT:

### UNJUST ENRICHMENT – MONEYS EXPENDED

17.     Plaintiff's Predecessors in Interest furnished valuable services and goods to Debtor. In the event there existed no express contract between Plaintiff's Predecessors in Interest and Debtor concerning those services and materials furnished by Plaintiff's Predecessors in Interest, it would be unjust to allow Debtor to benefit from such improvements without compensation. Plaintiff is entitled to recover the reasonable value thereof that Plaintiff asserts to be at least the amount set forth above.

## SEVENTH COUNT:

### FORECLOSURE OF LIEN

18.     Plaintiff claims a Constitutional mechanics' and materialmen's lien on the Property in accordance with Article 16, Section 37, Texas Constitution, and is entitled to foreclosure of this lien. There exists a document entitled "General Warranty Deed" dated May 25, 2007, purportedly conveying the Property to Debtor, as Grantee, which document is recorded in the Fannin County Real Estate Records under Volume 1307, page 14.

## DAMAGES

19.     Plaintiff's Predecessors in Interest have sustained and continue to sustain actual damages as a result of Debtor's wrongful conduct as alleged herein. Such damages include but are not limited to the amounts paid for the amounts paid for the restoration of the slaughterhouse as set forth above.

20.     The injuries and harm to Plaintiff's Predecessors in Interest resulted from conduct of Debtor amounting to fraud, malice, and willful injury as those terms are defined in Texas law as well as in the law pertaining to bankruptcy proceedings.  Plaintiff is entitled to an award of exemplary damages.

## JURY DEMAND

21.     Pursuant to Texas State Law, and as made applicable herein, Plaintiff hereby invokes and demands its right to a trial by jury.  *See* 28 U.S.C. § 157(e). In the event Debtor refuses to consent to a jury trial, Plaintiff reserves the right to withdraw the reference in protection of its fundamental right to a trial by jury.

## DEMAND FOR JUDGMENT

22.     WHEREFORE, PREMISES CONSIDERED, Plaintiff, Inglish International Construction, LLC prays that Debtor be cited to appear and answer herein and that upon final hearing, they have judgment against Debtor determining that all debts and damages due to the Plaintiff by Debtor are not, and shall not be, discharged by way of this bankruptcy pursuant to 11 U.S.C. §523;  for all damages alleged and/or referenced herein; prejudgment interest as allowed by law; post-judgment interest; court costs and for such other and further relief to which it may show itself to be justly entitled.

Respectfully submitted
***/S/ T. Rick Frazier***
T. RICK FRAZIER
Bar ID # 07406500
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034-8563
(972) 661-3288
(844) 558-5758 fax
email – trickfrazier@me.com

ATTORNEY FOR PLAINTIFF